UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-v-

EDWARD DAVIES,
                           Defendant.

18 Cr. 390 (PAE)

ORDER

PAUL A. ENGELMAYER, District Judge:

The Court has received an application from defendant Edward Davies seeking compassionate release from FCI Danbury, pursuant to 18 U.S.C. § 3582(c), in light of the risk that the COVID-19 pandemic presents to his health. For the reasons that follow, the Court grants Davies' motion.

Davies was involved in a large-scale drug trafficking conspiracy between 2012 and 2018, selling heroin, mixed with fentanyl, as a street-level dealer. *See* Dkt. 349 ("Sentencing Tr.") at 40. On November 15, 2018, Davies pled guilty to one count of conspiracy to distribute heroin and fentanyl in violation of 21 U.S.C. §§ 841(b)(1)(B) and 846. Dkt. 477 ("Gov't Opp'n") at 2. On March 29, 2019, the Court sentenced Davies to a mandatory-minimum (and below-Guidelines) sentence of 60 months' imprisonment, to be followed by four years' supervised release. *See* Sentencing Tr. at 52. Davies has been in custody since June 5, 2018. *See* Gov't Opp'n at 2. His estimated release date is August 3, 2022. *Id.*

On June 18, 2020, the Court received a compassionate release motion from Davies, seeking a modification of his sentence based on the COVID-19 pandemic. *See* Dkt. 474 ("Def.

Mem."). On June 24, 2020, the Government filed its letter in opposition. Gov't Opp'n. On June 25, 2020, Davies filed a reply memorandum. *See* Dkt. 478 ("Def. Reply").

Davies argues that his advanced age and serious medical conditions heighten his vulnerability to COVID-19. Def. Mem. at 2. The Government, in opposing Davies' motion, argues that he remains a threat to the community and that he has not proposed an adequate post-release plan to ensure his safety and minimize the chances that he will recidivate. *See id.*[1]

Under 18 U.S.C. § 3582(c)(1)(A), "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf," a court may reduce such defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Court must also consider the "factors set forth in section 3553(a) to the extent that they are applicable." *Id.* § 3582(c)(1)(A).

Congress tasked the Sentencing Commission with identifying the circumstances that are sufficiently extraordinary and compelling to justify a reduction in sentence. *United States v. Ebbers*, 432 F. Supp. 3d 421, 427 (S.D.N.Y. 2020) (quoting 28 U.S.C. § 994(t)). Relevant here, the Commission's policy statement and its corresponding commentary on § 3582(a)(1)(A) state that a court may reduce a sentence for "extraordinary and compelling reasons," including where the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a

---

[1] The Government does not contend that Davies has failed to exhaust his administrative remedies.

correctional facility and from which he or she is not expected to recover."[2] U.S.S.G. § 1B1.13(1)(A) & cmt. n.1(A). The defendant must also not be a danger to the community and the reduction must be consistent with the Commission's policy statement. *Id.* § 1B1.13(2)–(3).

Davies argues that the first of these factors favors his early release. The COVID-19 pandemic is indeed extraordinary and unprecedented in modern times in this nation. It presents a clear and present danger to free society for reasons that need no elaboration. And the crowded nature of jails and prisons presents an outsize risk that the COVID-19 contagion, once it gains entry, will spread.[3] Recognizing that the realities of life as an inmate present added challenges for a heightened-risk inmate who contracts the virus to care for himself, in the past few months numerous courts, including this one, have ordered the temporary release of inmates held in pretrial or presentencing custody and, in more limited instances, the compassionate release of high-risk inmates serving federal sentences.[4]

---

[2] U.S.S.G. § 1B1.13(1)(A) references only "a motion of the Director of the Bureau of Prisons" because it has not yet been updated to reflect the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, which allows defendants independently to seek compassionate release relief from federal courts. *Ebbers*, 432 F. Supp. 3d at 421–22, 427.

[3] *See* Timothy Williams, et al., *'Jails Are Petri Dishes': Inmates Freed as the Virus Spreads Behind Bars*, N.Y. Times (Mar. 30, 2020, updated May 20, 2020), https://www.nytimes.com/2020/03/30/us/coronavirus-prisons-jails.html; *see also United States v. Nkanga*, No. 18 Cr. 713 (JMF), 2020 WL 1529535, at *1 (citing *Interim Guidance on Mgmt. of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, Ctrs. for Disease Control and Prevention 2 (Mar. 23, 2020), https://www.cdc.gov/coronavirus/2019-ncov/downloads/guidance-correctional-detention.pdf) (highlighting danger faced by those in jails and prisons).

[4] *See, e.g.*, *United States v. Brown*, No. 18 Cr. 390 (PAE), Dkt. 472 (S.D.N.Y. Jun 17, 2020) (granting compassionate to defendant who was elderly, in poor health, and played a low-level role in a drug trafficking conspiracy); *United States v. Jasper*, No. 18 Cr. 390 (PAE), Dkt. 441 (S.D.N.Y. April 6, 2020) (ordering compassionate release of defendant with an immune-inflammatory disease who had served all but 34 days of a four-month sentence); *United States v. Hernandez*, No. 18 Cr. 834 (PAE), 2020 WL 1684062 (S.D.N.Y. April 2, 2020) (ordering

Davies argues that he is especially vulnerable to the most serious effects of COVID-19 because he is 60 years old and has a host of medical conditions including high blood pressure, hypertension, and obesity. Def. Mem. at 2. Davies' serious medical conditions, compounded by his age, indeed distinguish him from the vast majority of defendants who have sought compassionate release before this Court. And the Government, to its credit, forthrightly recognizes that Davies is at a significantly heightened risk of complications from COVID-19 compared to the average inmate at FCI Danbury and "has proffered a basis for the Court to find that extraordinary and compelling reasons for release exist within the meaning of [§] 3582(c)." Gov't Opp'n at 3. The Government instead opposes compassionate release by arguing (1) that Davies' release would be inconsistent with the § 3553(a) factors because he has yet to serve most of his sentence and still poses a danger to the community, and (2) that it is not clear that Davies' release plan would reduce his risk of contracting COVID-19. *Id.* at 11–18. The Court holds with Davies on both points.

First, the Court is satisfied that Davies presents a relatively minimal "danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). To be sure, Davies participated in a serious heroin- and fentanyl-trafficking conspiracy. But he played a low-level role, as a street seller, and the evidence was convincing that his participation was motivated by his desire to fund the deep heroin addiction that has plagued Davies for much of his adult life.

---

compassionate release of defendant with asthma who had served 17 months of a 24-month sentence and was scheduled for release in four months); *United States v. McKenzie*, No. 18 Cr. 834 (PAE), 2020 WL 1503669, at *2–3 (S.D.N.Y. Mar. 30, 2020) (granting bond pending sentencing, pursuant to 18 U.S.C. § 3145(c), to defendant who had pled guilty to single count of assault with a deadly weapon and had previously been released on bond); *United States v. Perez*, No. 19 Cr. 297 (PAE), 2020 WL 1329225, at *1 (S.D.N.Y. Mar. 19, 2020) (granting bail application, pursuant to § 3142(i), of 65-year-old defendant with COPD, in light of "unique confluence of serious health issues and other risk factors facing this defendant, . . . which place him at a substantially heightened risk of dangerous complications should [he] contract COVID-19").

*See, e.g.*, Sentencing Tr. at 13, 36.  Indeed, the Court at sentencing noted that the "root of [Davies'] continued drug selling" was his addiction, and that Davies was using the very same product he was selling to others.  *Id.* at 48–49.  Consistent with this, Davies' long and diverse criminal record consists overwhelmingly of street level drug sales to fund his habit.  *Id.* at 44.  Davies asserts, without contradiction, that he has remained sober for approximately 24 months while in prison, Def. Mem. at 5, which affords a degree of hope that—if supervised and subject to the special condition of drug treatment that the Court has imposed—he has the capacity to avoid returning to drug usage and the drug-dealing that he used to fund his habit.  Davies' age and physical decline further reduce the risk that he would engage in violent crime.[5]  The Court therefore concludes that Davies' release would not unduly endanger the community.

The Court next considers the § 3553(a) factors.  Two factors relevant here in light of the COVID-19 pandemic are the "history and characteristics of the defendant," and "the need to provide the defendant with needed . . . medical care."  18 U.S.C. § 3553(a).  These factors clearly favor Davies' early release in light of the pandemic for the reasons discussed above.  Davies has served 25 months of a sentence that, assuming full good time credit, will total approximately 51 months.  It is true that the Court has been disinclined to grant compassionate release to various defendants who have served less than, or only about, half of their sentence, generally viewing

---

[5] Davies' past is regrettably not wholly free of violence.  In 1998, Davies and two others were convicted of an armed robbery that involved the use of a firearm.  *See* Sentencing Tr. at 45.  Davies' criminal record does not reflect any evidence of later violence and the Government has not claimed that Davies has engaged in other violent acts.  Although the Court cannot be certain that Davies would not participate in violence following release, various factors make this unlikely.  These include Davies' advanced age and failing health, the restrictions on Davies' conduct attendant to his four-year supervised release term, and the deterrent effect of the supervised release regime.  For avoidance of doubt, the Court advises Davies that any criminal conduct following his release from FCI Danbury, which would constitute a violation of the conditions of supervised release, would legally support—and almost certainly result in—a new prison term as punishment for the violation.

such consequential reductions in sentence as incompatible with other § 3553(a) factors, including that the sentence reflect just punishment and protect the public.[6] In Davies' case, though, given his unusual vulnerability to COVID-19 even within the universe of inmates at heightened risk, the § 3553(a) factors advanced by Davies' release take on outsize importance. There is too great a risk to Davies that his continued incarceration in the face of the pandemic could function as a death sentence. Given the heightened risk to Davies presented by the pandemic, and the Court's judgment that he does not present a meaningful danger to the public, the Court concludes that in this unusual case the § 3553(a) factors will be served, and a just sentence imposed, by granting compassionate release, thus enabling Davies to begin serving a term of supervised release under the close supervision of the Probation Department. In one analogous circumstance, involving a co-defendant of Davies, this Court has similarly granted compassionate release, and colleagues have likewise done so in similarly factually compelling cases.[7]

---

[6] *See, e.g.*, *United States v. Nissen*, No. 17 Cr. 477 (PAE), 2020 WL 2614825, at *3 (S.D.N.Y. May 22, 2020) (denying compassionate release motion for defendant in generally good health who had served 7 months of a 27-month sentence); *United States v. Butler*, No. 18 Cr. 834 (PAE), Dkt. 461 (S.D.N.Y. Apr. 7, 2020) (denying compassionate release motion for recently sentenced defendant with asthma and a cardiac condition who had served 15 months of 60-month sentence); *United States v. Credidio*, No. 19 Cr. 111 (PAE), Dkt. 62 (S.D.N.Y. Mar. 30, 2020) (for similar reasons, denying compassionate release motion for an elderly defendant who had served just two months of a 33-month sentence).

[7] *See Brown*, No. 18 Cr. 390 (PAE), Dkt. 472 (S.D.N.Y. Jun 17, 2020) (granting, for substantially the same reasons, compassionate release to Davies' co-defendant who was elderly, in poor health, and also played a low-level role in the drug trafficking conspiracy); *see also, e.g.*, *United States v. Scparta*, No. 18 Cr. 578 (AJN), 2020 WL 1910481, at *8–9 (S.D.N.Y. Apr. 20, 2020) (granting compassionate release motion for 55-year-old defendant with hypertension and other conditions who had served a little over half his sentence); *United States v. Smith*, No. 12 Cr. 133 (JFK), 2020 WL 1849748, at *4–5 (S.D.N.Y. Apr. 13, 2020) (granting compassionate release motion for 62-year-old high-risk defendant who is not a danger to society); *United States v. Zuckerman*, No. 16 Cr. 194 (AT), 2020 WL 1659880, at *5–6 (S.D.N.Y. Apr. 3, 2020) (granting compassionate release motion for 75-year-old defendant with health issues); *United States v. Delgado*, No. 3:18 Cr. 17 (VAB), 2020 WL 2464685, at *3–4, 6

The Government raises a final objection: that Davies has not presented a reentry plan that will sufficiently minimize his potential exposure to COVID-19 and reduce the risk of recidivism. Gov't Opp'n at 15–17. Davies, through counsel, has proffered that he will stay with his sister and her family upon his release. Def. Mem. at 5; Def. Reply at 1. Davies' sister has agreed to pick him up from Danbury and drive him to her home, to eliminate any further risk of infection. Def. Reply at 1. And, after arriving at his sister's house, Davies pledges to self-quarantine in his own room for two weeks. *Id.* On these facts, the Court is satisfied that Davies will have a level of support and safety that lowers the risks of infection.[8] And, as to recidivism, Davies' residence with his sister and her family appears a sufficiently stable context in which to fashion a law-abiding existence.

Accordingly, for the foregoing reasons, the Court grants Davies' motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). The Court directs Davies' counsel, the Probation Department, and the Bureau of Prisons to coordinate so as to arrange for Davies' release (and in-person pickup from Danbury by his sister) forthwith.

SO ORDERED.

*Paul A. Engelmayer*
PAUL A. ENGELMAYER
United States District Judge

Dated: June 26, 2020
      New York, New York

---

(D. Conn Apr. 30, 2020) (granting compassionate release motion for high-risk defendant who had completed 29 months of a 120-month sentence).

[8] The Court is unpersuaded that Davies would be at greater risk of contracting COVID-19 residing at his sister's home in Brooklyn than in prison. *See* Gov't Opp'n at 16.